ANTHONY J. ONCIDI (State Bar No. 118135)
aoncidi@proskauer.com
PHILIPPE A. LEBEL (State Bar No. 274032)
plebel@proskauer.com
DYLAN K. TEDFORD (State Bar No. 332951)
dtedford@proskauer.com
PROSKAUER ROSE LLP
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3010
Telephone:  (310) 284-5690
Facsimile:   (310) 557-2193

Attorneys for Defendant
HARRY WINSTON, INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAMER SROUR AYOUB,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>HARRY WINSTON, INC. and DOES 1 to 100, inclusive,<br><br>　　　　　　　Defendants. | Case No. _____<br><br>**DEFENDANT HARRY WINSTON, INC.'S NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441(a), 1446**<br><br>**(DIVERSITY JURISDICTION)** |

TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND COUNSEL FOR PLAINTIFF SAMER SROUR AYOUB:

PLEASE TAKE NOTICE that Defendant Harry Winston, Inc. ("Harry Winston" or "Defendant"), by and through its undersigned counsel, hereby invokes the Court's jurisdiction under 28 U.S.C. §§ 1332(a), 1441(a), and 1446 and removes the above-entitled action to this Court from the Superior Court of the State of California for the County of San Francisco.

## BACKGROUND

1. On or about January 12, 2021, plaintiff Samer Srour Ayoub ("Plaintiff" or "Ayoub") filed a civil Complaint ("Complaint") against Harry Winston and "DOES 1 to 100" in the California Superior Court for the County of San Francisco, entitled "*SAMER SROUR AYOUB, Plaintiff, v. HARRY WINSTON, INC. and DOES 1 to 100, inclusive, Defendants*", Case No. CGC21588879 (the "Action"). Harry Winston is the sole named defendant in Ayoub's Complaint.

2. On February 5, 2021, Plaintiff, through his counsel, caused a copy of the Complaint and Summons to be served on Harry Winston through its counsel, pursuant to section 415.30 of the California Code of Civil Procedure. *See* Declaration of Philippe A. Lebel ("Lebel Decl."), ¶ 2. True and correct copies of the Summons and Complaint that were served on Harry Winston's counsel on February 5, 2021 are attached as **Exhibits A** and **B,** respectively, to the Declaration of Philippe A. Lebel. A true and correct copy of the accompanying Notice and Acknowledgement of Receipt – Civil ("NAR") served on Harry Winston by email and U.S. Mail on February 5, 2021 is attached as **Exhibit C** to the Declaration of Philippe A. Lebel.

3. On February 24, 2021, Harry Winston, through its counsel, executed and served the signed NAR on Plaintiff. *See* Lebel Decl., ¶ 3 & **Exhibit D**.

4. On March 3, 2021, Harry Winston filed its Answer to the Complaint in the Superior Court, and served it by email and U.S. Mail on Plaintiff. *See* Lebel Decl., ¶ 4. A true

2
NOTICE OF REMOVAL TO FEDERAL COURT
CASE NO. _____

and correct copy of Harry Winston's Answer is attached to the Declaration of Philippe A. Lebel as **Exhibit E**.

5. Attached as **Exhibits F-1** through **F-3** to the Declaration of Philippe A. Lebel are true and correct copies of all other process, pleadings, and/or orders served on Harry Winston to date in the Action.

6. Therefore, in accordance with 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings and orders served upon or filed by Harry Winston are attached as Exhibits A through F-3 to the Declaration of Philippe A. Lebel, filed concurrently herewith.

7. In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that Harry Winston shall promptly serve Plaintiff with a copy of this Notice of Removal and all supporting papers and file the same with the Clerk of the San Francisco Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 will be satisfied.

## TIMELINESS OF REMOVAL

8. As noted above, Harry Winston received a copy of the Complaint and Summons on February 5, 2021, with an accompanying NAR, pursuant to section 415.30 of the California Code of Civil Procedure.

9. Harry Winston executed the NAR and served it on Plaintiff on February 24, 2021 – *i.e.*, within 19 days of receipt. *See* Lebel Decl., ¶ 3 & Exh. D. Accordingly, service of the Complaint and Summons on Harry Winston was effective under applicable law on February 24, 2021. *See* Cal. Code Civ. Proc. § 415.30(c) ("Service of a summons pursuant to this section is deemed complete on the date a written acknowledgement of receipt of summons is executed, if such acknowledgement thereafter is returned to the sender"); *see also, e.g.*, *Burns v. Azusa Pacific University*, 2020 WL 7229762, at *2 (C.D. Cal. Dec. 8, 2020) (denying remand motion; "Section 415.30's 'language plainly states service is effective only when a defendant has signed and returned the form, and courts unanimously have come to the same conclusion.'") (citations omitted); *Llanos v. Delta Air Lines, Inc.*, 2020 WL 635477, at *2 (C.D. Cal. Feb. 11, 2020) (denying remand motion; "The language plainly states service is effective only when a defendant

3
NOTICE OF REMOVAL TO FEDERAL COURT
CASE NO. _____

has signed and returned the form, and courts unanimously have come to the same conclusion.") (citations omitted).

10. Accordingly, Harry Winston filed this Notice of Removal within 30 days of the February 24, 2021 service of the Complaint and Summons, and this Notice is timely under 28 U.S.C. § 1446(b).

**PRELIMINARY STATEMENT OF JURISDICTION, VENUE, AND DIVISION**

11. **Jurisdiction:** Federal "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000" and is between "citizens of different States[.]" 28 U.S.C. § 1332(a), (a)(l). This Court has original jurisdiction over this action under 28 U.S.C. § 1332 because, as discussed in more detail below, the matter in controversy in this case exceeds $75,000.00 and this case is between citizens of different states.

12. Any "civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). As discussed above, Plaintiff filed the Complaint in San Francisco County Superior Court. Therefore, the United States District Court for the Northern District of California is the proper venue for this removal as this district "embrac[es] the place where" the action was pending. 28 U.S.C. § 1441(a).

13. **Intradistrict Assignment:** All "civil actions which arise in the count[y] of . . . San Francisco . . . shall be assigned to the San Francisco Division or the Oakland Division" of the United States District Court for the Northern District of California. N.D. Cal. Civ. Local Rule 3-2(d). Removal of this action to this Division is proper as this matter arose in the county of San Francisco, where Plaintiff formerly was employed by Harry Winston.

**DIVERSITY JURISDICTION**

14. Diversity of citizenship jurisdiction exists when there is diversity of citizenship between every plaintiff and every defendant at the time the plaintiff files a lawsuit. *Exxon Mobil*

4
NOTICE OF REMOVAL TO FEDERAL COURT
CASE NO. _____

*Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 553 (2005); *Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 571 (2004).

15. A natural person is a citizen of California "for diversity purposes" if she is "a citizen of the United States and . . . domiciled in the state." *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A corporation "shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(l). "A corporation's principal place of business is where a corporation's 'high level officers direct, control, and coordinate the corporation's activities.'" *Hertz Corp. v. Friend*, 559 U.S. 77, 92 (2010).

16. Here, Harry Winston is informed and believes that Plaintiff is a citizen of the United States and domiciled in California. Furthermore, Plaintiff alleges that he is a resident of the State of California, in Santa Clarita County. *See* Complaint, ¶ 1. He is therefore a citizen of California for diversity purposes.

17. The sole named defendant in this action is Harry Winston. Harry Winston is incorporated under the laws of the State of New York. Its registered offices are located at 718 5th Avenue, New York, New York 10019, and its current headquarters offices are located at 717 Fifth Avenue, Suite 9, New York, New York 10022. *See* Declaration of Dan Mastacciuola ("Mastacciuola Decl."), ¶ 4. It is from these locations in New York that Harry Winston's high-level officers and/or executives direct, control, and coordinate the company's operations, and from where corporate policies – including human resources and payroll policies – are established. *Id.* Accordingly, Harry Winston's "nerve center" is in New York and it is a citizen of New York for purposes of diversity jurisdiction.

18. The presence of Doe defendants has no bearing on diversity with respect to removal. 28 U.S.C. § 1441(b)(1) ("[T]he citizenship of defendants sued under fictitious names shall be disregarded").

19. Accordingly, because Plaintiff and Harry Winston are citizens of different states, there is complete diversity of citizenship.

5
NOTICE OF REMOVAL TO FEDERAL COURT
CASE NO. _____

## AMOUNT IN CONTROVERSY

20. Without conceding that Plaintiff is entitled to damages or could recover damages in any amount whatsoever, based on the allegations in the Complaint, the amount in controversy in this action exceeds $75,000, exclusive of interest and costs.

21. The amount in controversy "burden is satisfied if the plaintiff claims a sum greater than the jurisdictional requirement." *Gaus v. Miles, Inc.*, 980 F.2d 564,566 (9th Cir. 1992). Where, as here, a plaintiff's complaint does not specify the amount that is demanded, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy requirement is satisfied. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007). In assessing whether the amount in controversy exceeds $75,000, the Court must presume that Ayoub will prevail on each and every one of his claims. *See Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (citation omitted). If a plaintiff's complaint is silent as to the amount of claimed damages, then the removing defendant need only establish that it is more probable than not that the plaintiff's claims exceed the jurisdictional minimum. *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996)

22. In determining whether a complaint meets the $75,000 threshold of 28 U.S.C. § 1332(a), a court may consider the aggregate value of claims for compensatory and punitive damages, as well as attorneys' fees. *See*, *e.g.*, *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount.") (footnote omitted); *Goldberg v. CPC Int'l, Inc.*, 678 F. 2d 1365, 1367 (9th Cir. 1982) *cert. denied*, 459 U.S. 945 (1982) (attorneys' fees may be taken into account to determine jurisdictional amount).

23. In his Complaint, Ayoub alleges causes of action for: (1) meal period violations; (2) rest period violations; (3) failure to pay minimum wages; (4) failure to pay overtime wages; (5) waiting time penalties pursuant to California Labor Code section 203; (6) itemized wage statement violations pursuant to California Labor Code section 226; (7) violation of California's

Unfair Competition Law; (8) unlawful harassment pursuant to California's Fair Employment and Housing Act ("FEHA"); (9) failure to prevent discrimination and retaliation pursuant to the FEHA; (10) wrongful termination in violation of public policy; (11) wrongful termination in violation of California Government Code section 6310; and (12) intentional infliction of emotional distress. *See generally* Lebel Decl., Exh. B (Complaint).

24. Ayoub's harassment, failure to prevent harassment and/or wrongful termination claims, as well as related statutory attorneys' fees, place in excess of **$109,347.20** in controversy, on their own:

    a. As a result of HW's alleged harassment and failure to prevent acts of discrimination pursuant to the FEHA, Ayoub claims he has "suffered and continues to suffer aggravation of his injuries, substantial losses in earnings and job benefits, humiliation, embarrassment, mental and emotional distress, and discomfort." Complaint, ¶¶ 87, 93. For the above, Ayoub seeks compensatory relief as well as punitive damages, and attorneys' fees. *Id*. at ¶¶ 93-95; *see also id.* at 14:6-20. Ayoub also seeks "[c]ompensatory damages, including but not limited to, past and future lost wages and benefits," as well as attorneys' fees and punitive damages, pursuant to his tenth and eleventh wrongful termination causes of action. *Id.* at 14:22-15:5.

    b. Plaintiff's claims put at least $29,000 of lost income (*i.e.*, back pay) at-issue. Plaintiff's employment was terminated on or about September 15, 2020. Complaint, ¶ 34. As noted above, Plaintiff seeks to recover back pay from his termination date. *See, e.g., id.* at ¶¶ 93, 108. Plaintiff earned at least approximately $1,222.80 per week prior to the end of his employment with Harry Winston. *See* Mastacciuola Decl., ¶¶ 6-7. Thus, assuming that Plaintiff could recover back pay—at minimum—through the date of this Notice of Removal, a period of approximately 24 weeks, Ayoub's claims for back pay place approximately $29,347.20 in controversy, exclusive of interest.

    c. In evaluating the potential punitive damages for purposes of removal, courts may rely on punitive damage awards in similar cases. *See Sasso v. Noble Utah Long Beach, LLC*,

2015 WL 898468, at *6 (C.D. Cal. March 3, 2015) ("[T]o establish probable punitive damages, a party asserting federal diversity jurisdiction may also introduce evidence of jury verdicts in cases involving analogous facts.") (citations omitted); *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002) ("The fact that the cited cases involve distinguishable facts is not dispositive. Notwithstanding these differences, the jury verdicts in these cases amply demonstrate the potential for large punitive damage awards in employment discrimination cases."). In similar single-plaintiff actions pursuant to the FEHA, juries have awarded punitive damages well in excess of $50,000. *See, e.g.*, *Sawyer v. Retail Data, LLC*, 2015 WL 3929695, at *2 (C.D. Cal. Apr. 29, 2015) (denying motion to remand; assessing punitive damages in controversy based on "recent Orange County and Los Angeles County employment discrimination cases where plaintiffs were awarded from $50,000 to $7.5 million in punitive damages"); *Jackson v. CEVA Logistics*, 2020 WL 1967208, at *8 N.D. Cal. Apr. 24, 2020) (denying motion to remand; relying on multiple verdicts in race and other discrimination cases where juries awarded in excess of $75,000 in punitive damages). Accordingly, Ayoub's request for punitive damages places, *at minimum*, an additional $50,000 in controversy.

        d.  Ayoub's request for statutory attorneys' fees places at least an additional $30,000 in controversy. In calculating the amount in controversy as to attorneys' fees when no specific amount is pled, courts may rely on reasonable conservative estimates based on similar cases. *See Sasso*, 2015 WL 898468, at *5-*6 (denying motion for remand in disability discrimination, retaliation, and failure to accommodate FEHA action) (citations omitted). Other federal courts in California have conservatively estimated the amount of attorneys' fees recoverable in employment actions to be $30,000, for purposes of removal. *See, e.g.*, *Guytan v. Swift Transp. Co. of Ariz., LLC*, 2017 WL 2380159, at *3 (C.D. Cal. June 1, 2017) (denying motion to remand; "This Court has determined previously that 'an appropriate and conservative estimate' for attorneys' fees in employment cases in this district 'may reasonably be expected to equal at least $30,000.'") (quoting *Sasso*). Accordingly, conservatively, at least $30,000 in statutory attorneys' fees are also at issue.

25. In addition to his wrongful termination claims, Plaintiff also seeks to recover thousands of dollars in unpaid wages and penalties stemming from his wage and hour allegations, which place (at minimum) an additional **$18,857.02** in controversy:

    a. In his First and Second Causes of Action in the Complaint, Ayoub seeks premiums for allegedly non-compliant meal and rest breaks. *See* Complaint, ¶¶ 36-40, 41-45. Plaintiff alleges he was "always on-call" during his meal and rest breaks, and claims there was an expectation he would cut his break short if he "received a call to return." *Id.* at ¶17. If true, such a practice would render essentially *all* of Ayoub's meal and rest periods non-compliant under California Labor Code section 226.7 and/or the applicable Industrial Welfare Commission Wage Order. *See, e.g.*, Cal. Lab. Code §§ 226.7; 8 Cal. Code Regs. § 11070(11)(C) ("Unless the employee is relieved of all duty…, the meal period shall be considered an 'on duty' meal period and counted as time worked."); *Augustus v. ABM Security Servs., Inc.*, 2 Cal. 5th 257, 259 (2016) ("[S]tate law requires employers to provide their employees with rest periods that are free from duties or employer control."). As a result, Ayoub would potentially be entitled to one hour of his usual wages for each day in which he was not provided with a compliant rest and/or meal period. *See* Cal. Lab. Code § 226.7(c). Here, Ayoub was employed by Harry Winston between February 19, 2019 and September 15, 2020 – *i.e.*, a period of approximately 82 weeks. *See* Complaint, ¶ 9. Plaintiff typically worked shifts of at least eight hours in length, five days per week, and his last rate of pay was approximately $30.57 per hour. *See* Mastacciuola Decl., ¶¶ 6-7. Accordingly, conservatively assuming that Ayoub missed just three breaks total (meal or rest) per workweek, his First and Second Causes of Action alone place an additional $7,520.22 in controversy.[1]

    b. In addition to his claims for non-compliant meal periods and rest breaks, Plaintiff also alleges that he was not paid all minimum and overtime wages (*see* Complaint, ¶¶ 46-51, 52-59), and seeks derivative waiting time penalties pursuant to Labor Code section 203. *See id.* at ¶¶ 60-67. Even assuming Plaintiff could prevail in establishing *any* amount of meal or rest break

---

[1] $30.57 [hourly rate] x 3 [assumed violations/week] x 82 = $7,520.22.

9

NOTICE OF REMOVAL TO FEDERAL COURT
CASE NO. _____

premiums and/or even a few dollars of unpaid wages, as alleged, he would be entitled to 30 days' of derivative waiting time penalties because such "owed" amounts were never paid upon his termination or resignation. *See* Complaint, ¶¶ 63-66. Based on his typical eight-hour workday, the additional 30 days' of waiting time penalties places an additional $7,336.80 in controversy.[2]

       c. Plaintiff's allegations also put in controversy additional derivative penalties pursuant to Labor Code section 226(e), as well as the amounts for underlying unpaid minimum and/or overtime wages.

26. Thus, taken together, excluding purported damages for emotional distress, Ayoub's wage and hour and non-wage and hour claims place at least **$128,204.22** in controversy, well in excess of the $75,000.00 threshold for diversity jurisdiction.

## CONCLUSION

27. Based on the foregoing, because there is complete diversity of citizenship between the parties and because the amount in controversy, exclusive of interest and costs, exceeds $75,000, this Action may be removed to this Court.

WHEREFORE, Harry Winston accordingly removes the Action, now pending in the Superior Court for the State of California for the County of San Francisco, to this Court.

DATED: March 5, 2021

PROSKAUER ROSE LLP
ANTHONY J. ONCIDI
PHILIPPE A. LEBEL
DYLAN K. TEDFORD

By:    /s/ Philippe A. Lebael
        Philippe A. Lebel

Attorneys for Defendant
HARRY WINSTON, INC.

---

[2] $30.57 [hourly rate] x 8 [typical daily hours] x 30 days = $7,336.80.