UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAMER SROUR AYOUB,

Plaintiff,

v.

HARRY WINSTON, INC.,

Defendant.

Case No. 21-cv-01599-JST

**ORDER GRANTING SECOND MOTION FOR APPROVAL OF PAGA SETTLEMENT**

Re: ECF No. 45

Before the Court is Plaintiff Samer Srour Ayoub's second unopposed motion for approval of a settlement of claims under the Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2698 *et seq*. ECF No. 45. The Court will grant the motion for approval of the settlement amount and grant Ayoub's request for an award of attorney's fees and costs in part.

## I.     BACKGROUND

Ayoub worked as a security guard at the store of Defendant Harry Winston, Inc., from March 15, 2019, to September 28, 2020. ECF No. 45 at 3. Following the end of his employment, Ayoub filed a complaint against Harry Winston, asserting individual claims for wage and hour violations and derivative claims under PAGA on behalf of himself and other non-exempt security officers in California employed by Harry Winston beginning December 18, 2019. *Id.* at 6, 11-23.

On September 3, 2021, the parties attended a half-day mediation at which Ayoub agreed to resolve his individual claims for $76,500, ECF No. 35 at 3, and to settle the PAGA claims for $23,500 (the "PAGA Settlement Fund[1]"), ECF No. 35-2 at 3. Ayoub filed an unopposed motion

---

[1] The Court uses the phrase "PAGA Settlement Fund" instead of the phrase "Total Settlement Fund," used in the parties' settlement agreement, to avoid the suggestion that the amount includes Ayoub's individual settlement.

United States District Court
Northern District of California

United States District Court
Northern District of California

for approval of the PAGA settlement and requested that the Court dismiss his individual claims with prejudice.  ECF No. 35.  The Court denied the motion on the ground that Ayoub had failed to provide the information required for the Court to determine the propriety of the settlement amount and requested attorney's fees.  ECF No. 44 at 3-6.  Ayoub subsequently filed a renewed motion. EFC No. 45.

The proposed PAGA settlement deducts the following amounts from the $23,5000 PAGA Settlement Fund: (1) Ayoub's attorney's fees in the amount of $7,833.33, (2) Ayoub's litigation costs in the amount of  $3,134.64, and (3) third-party administration costs in the amount of $975. ECF No. 45 at 4.  Thus, the proposed net PAGA settlement after deductions is $11,557.03, of which 75% would be paid to the California Labor Workforce Development Agency, and 25% would be distributed to the 14 aggrieved employees[2], ECF No. 45 at 6, as required by statute.  *See* Cal. Lab. Code § 2699(i).[3]

## II.     LEGAL STANDARD

"A PAGA representative action is . . . a type of *qui tam* action" in which a private plaintiff pursues "a dispute between an employer and the state Labor and Workforce Development Agency" ("LWDA") on behalf of the state.  *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 382, 384 (2014), *abrogated on other grounds by Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022).  There are "fundamental differences between PAGA actions and class actions." *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 435 (9th Cir. 2015) (internal quotation marks and alteration omitted).  For one, class certification is not required to pursue a PAGA representative claim.  *See Arias v. Super. Ct*., 46 Cal. 4th 969, 975 (2009).  While a judgment in a PAGA action "binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government," it is important to note that only the aggrieved employees' PAGA claims are released.  *Id.* at 986.  No individual claims of the aggrieved employees are released, and individual employees are free to pursue individual claims if they so

---

[2] In supplemental briefing to the Court, Ayoub corrected the number of aggrieved employees from 15 to 14.  EFC No. 55 at 1.

[3] The resulting distribution to each employee will be approximately $206.38.

1   choose.  *Patel v. Nike Retail Servs., Inc.*, No. 14-cv-04781-RS, 2019 WL 2029061, at *3 (N.D.

2   Cal. May 8, 2019).

3        "[B]ecause a settlement of PAGA claims compromises a claim that could otherwise be

4   brought by the state," PAGA requires that a court "review and approve any settlement of any civil

5   action filed pursuant to [PAGA]."  *Ramirez v. Benito Valley Farms, LLC*, No. 16-cv-04708- LHK,

6   2017 WL 3670794, at *2 (N.D. Cal. Aug. 25, 2017) (quoting Cal. Lab. Code § 2699(l)(2)).

7   "'[N]either the California legislature, nor the California Supreme Court, nor the California Courts

8   of Appeal, nor the [LWDA] has provided any definitive answer' as to what the appropriate

9   standard is for approval of a PAGA settlement."  *Jordan v. NCI Grp., Inc.*, No. 16-cv-01701- JVS-

10  SP, 2018 WL 1409590, at *2 (C.D. Cal. Jan. 5, 2018) (quoting *Flores v. Starwood Hotels &*

11  *Resorts Worldwide, Inc.*, 253 F. Supp. 3d 1074, 1075 (C.D. Cal. 2017)).  In the absence of an

12  express framework, several courts have evaluated proposed PAGA settlements under the relevant

13  factors articulated in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on*

14  *other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), which courts otherwise use

15  to determine the fairness of a class action settlement under Rule 23(e).  *See Ramirez*, 2017 WL

16  3670794, at *3; *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016);

17  *Patel*, 2019 WL 2029061, at *2.  Several of these factors "are not unique to class action lawsuits

18  and bear on whether a settlement is fair and has been reached through an adequate adversarial

19  process."  *Ramirez*, 2017 WL 3670794, at *3.

20  **III.    DISCUSSION**

21          **A.    Fairness, Reasonableness, and Adequacy of PAGA Settlement**

22          The *Hanlon* factors relevant to a PAGA settlement "include (1) the strength of plaintiff's

23  case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the amount

24  offered in settlement; (4) the extent of discovery completed; (5) the experience and views of

25  counsel; and (6) the presence of a government participant."  *Id.*  The Court finds that these factors

26  favor approval of the PAGA settlement in this case because the agreement is fair, reasonable, and

27  adequate in light of PAGA's public policy objectives.

28

United States District Court
Northern District of California

3

1.      **Strength of Ayoub's Case**

In general, "legal uncertainties at the time of settlement" favor approval of a settlement. *Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 WL 4105971, at *10 (N.D. Cal. Nov. 16, 2007). Here, Ayoub would be required to prove at trial each Labor Code violation for each of the 14 aggrieved employees in order to recover penalties under PAGA. *See Patel*, 2019 WL 2029061, at *3; *Arias*, 46 Cal. 4th at 987 ("Recovery of civil penalties under [PAGA] requires proof of a Labor Code violation . . . ."). The strength of each employee's PAGA claim may vary. Further, even if Ayoub succeeded in proving each violation, Ayoub "may not recover all of the civil penalties sought" because "a court has discretion to reduce the penalty awarded to Ayoub when 'to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory.'" *Patel*, 2019 WL 2029061, at *3 (quoting Cal. Lab. Code § 1699(e)(2)). Therefore, this factor weighs in favor of approval.

2.      **Risk, Expense, Complexity, and Likely Duration of Further Litigation**

The need to prove each Labor Code violation for each of the 14 employees threatens a risky and expensive trial that would extend the timeline of the litigation. Ayoub also cites several risks associated with the PAGA allegations. EFC No. 45 at 9-11. For example, there are no records to prove pre-shift, unpaid work, which weakens Ayoub's ability to show unpaid overtime. *Id.* at 10. Additionally, because this case is still in its early stages, the duration of litigation would be substantially extended in the absence of settlement. Both parties would need to conduct thorough discovery relating to each of the 14 aggrieved employees, which would be costly and time-consuming. Ayoub additionally risks an adverse judgment resulting in diminished recovery, and Harry Winston risks a judgment rendering a significantly higher fine. Accordingly, this factor favors approval of the settlement. *See Patel*, 2019 WL 2029061, at *3.

3.      **Amount Offered in Settlement**

"When considering whether the amount offered in a settlement is fair and adequate, 'it is well-established law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.'" *Boddie v. Signature Flight Support Corp.*, No. 19-cv-03044-DMR, 2021 WL 2651369, at *6 (N.D. Cal.

United States District Court
Northern District of California

1  June 28, 2021) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527

2  (C.D. Cal. 2004)).  The proposed PAGA settlement amount is $23,500, representing 22.4% of

3  Harry Winston's $105,029.06 maximum exposure.[4]  EFC No. 45 at 11.

4            As justification for the proposed settlement amount, Ayoub cites *Reynolds v. Direct Flow*

5  *Medical, Inc.*, where the court granted approval for a settlement representing only 13% of the

6  estimated maximum exposure.  No. 17-cv-00204-KAW, 2019 WL 4168959, at *3 (N.D. Cal. Sept.

7  3, 2019)*.  Reynolds* is distinguishable because it was a class action lawsuit and the plaintiff would

8  have had to obtain class certification in the absence of a settlement.  *Id.* at *4.  The reasonableness

9  of the settlement amount was derived, in part, from that significant hurdle.  Additionally, Ayoub

10 cites *Stovall-Gusman v. Granger, Inc.*, where the court granted approval of a settlement that

11 represented only 7.3% of the potential recovery.  No. 13-cv-02540-HSG, 2015 WL 3776765, at *4

12 (N.D. Cal. June 17, 2015).  However, the Court in *Stovall-Gusman* considered the risk of

13 maintaining class certification throughout the litigation in assessing the reasonableness of the

14 settlement amount. Given the differences of the circumstances at hand, the Court does not find

15 these cases to be persuasive or relevant.

16           However, settlement for 22.4% of the maximum exposure in this case is nonetheless fair,

17 reasonable, and consistent with "PAGA's purpose of deterring noncompliance with California's

18 labor law," *Patel*, 2019 WL 2029061, at *3; *see also id.* (approving a PAGA settlement amount

19 representing 22.8% of the maximum total exposure); *Boddie* 2021 WL 2651369, at *8 (approving

20 a settlement amount representing 11% of the total exposure).  This factor thus favors approval.

21                          **4.      Extent of Discovery Completed**

22           A showing of thorough discovery weighs in favor of approval.  *See Boddie,* 2021 WL

23 2651369, at *9; *Patel*, 2019 WL 2029061, at *4.  Thorough discovery will give parties more

24 insight into a defendant's "potential liability and the risks of further litigation."  *Boddie*, 2021 WL

25 2651369 at *9.  Here, the parties did not conduct formal discovery prior to mediation but

26

27 [4] Ayoub miscalculated this total and the corresponding exposure percentage in his motion; the
   figure in this order represents the Court's calculation of the sum of $8,492 for missed meal
28 periods, $33,968 for missed rest periods, $29,212.48 for unpaid overtime, and $33,356.58 for
   wage statement violations.

exchanged information pursuant to the Initial Discovery Protocols.  EFC No. 45 at 4.  Through this process, Ayoub attained sufficient data to create a model of maximum liability.  *Id.* at 6.  Ayoub cites *Arias*, 46 Cal. 4th 969, and *McKenzie v. Fed. Express Corp.*, 765 F.Supp.2d 1222, 1233 (C.D. Cal. 2011), to justify his assertion that a PAGA case does not "require the same amount of data" as a class action.  EFC No. 45 at 5.  However, these cases do not extend that reasoning; they merely state that a PAGA action is *different* from a class action in that a PAGA action does not have the same requirements for certification.  Further discovery may have shed light on the benefits and risks associated with continued litigation.  As a general matter, the absence of formal discovery weighs against approval, and it does so here.

### 5.      Experience and Views of Counsel

Plaintiff's counsel has substantial experience in employment litigation, including wage and hour claims, class actions, and PAGA claims.  EFC No. 45-1 at 2-3; EFC No. 50 at 2.  Counsel has facilitated several PAGA settlements and, based on this experience, believes the PAGA settlement to be fair, reasonable, and adequate.  EFC No. 45-1 at 2-4.  This factor thus weighs in favor of approval.[5]

### 6.      Presence of a Government Participant

Pursuant to Section 2699(l)(2) of the California Labor Code, Ayoub provided notice of the proposed settlement to the LWDA.  EFC No. 45-1 at 4.  The LWDA has not provided a response concerning the proposed settlement.  This factor is therefore neutral.

### 7.      Conclusion

Four of the six factors favor approval, one disfavors approval, and one is neutral.  Considered in their totality, the Court finds that these factors weigh in favor of the settlement.  The PAGA settlement amount of $23,500 is approved.

---

[5] The Court considers this factor, as it must, but gives it little weight.  "Although a court might give weight to the fact that counsel for the class or the defendant favors the settlement, the court should keep in mind that the lawyers who negotiated the settlement will rarely offer anything less than a strong, favorable endorsement."  *Principles of the Law of Aggregate Litigation* § 3.05 cmt. a (2010).

United States District Court
Northern District of California

**B.      Attorney's Fees and Costs**

Ayoub requests attorney's fees in the amount of 33.3% of the PAGA Settlement Fund, or $7,833.33.  EFC No. 45 at 3.  As to costs, Ayoub's counsel states that total costs incurred are $3,134.64, plus $975 in administration costs to Phoenix Class Action Settlement Solutions, for a total of $4,109.64.  ECF No. 45 at 4.  The settlement also provides that "in the event the Court approves a payment of less than these amounts, the difference will be added to the [PAGA] Settlement Fund.  If the Court awards a lesser amount, it shall not affect the terms of the Parties' settlement."  EFC No. 35-2 at 3.

PAGA provides that "[a]ny employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs."  Cal. Lab. Code § 2699(g)(1).  However, it does not provide specific standards for evaluating the reasonableness of attorney's fees in connection with a settlement of PAGA claims.  The Court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  "Courts analyzing attorneys' fees in PAGA cases have used both methods."  *Boddie*, 2021 WL 2651369, at *9 (collecting cases).  Regardless of which method is used, the Court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).  The percentage-of-the-fund is the typical method of calculating class fund fees, but the Court should use the lodestar method as a cross-check to determine the reasonableness of the fee award.  *Vizcaino*, 290 F.3d at 1050.  With respect to the percentage-of-fund method, the Ninth Circuit has established that 20-30% of the recovery is the "usual range" of reasonable attorney's fees, and that 25% is the "benchmark" award.  *Id.* at 1047 (citation omitted).  A court may depart from this benchmark so long as it "provid[es] adequate explanation in the record of any 'special circumstances' justifying a departure."  *In re Bluetooth Headset Prods.*, 654 F.3d at 942; *see also Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (explaining that the benchmark should be adjusted for special circumstances, such as the hours devoted to the case or other relevant factors).

In this Court's prior order denying Ayoub's first unopposed motion for approval of the

United States District Court
Northern District of California

United States District Court
Northern District of California

1   PAGA settlement, the Court noted that the separate settlement agreement for Ayoub's individual

2   claims includes a provision that secures for Ayoub's counsel attorney's fees and costs in the

3   amount of $28,500.[6]  *Compare*  ECF No. 44 at 6 *with* ECF No. 42 at 8.  The Court further directed

4   that "[a]ny future motion should address why additional attorney's fees are warranted for the

5   PAGA claim and why litigation expenses should be paid out of the PAGA . . . Settlement Fund."

6   ECF No. 44 at 6.  Ayoub states that, just as the PAGA fees amount to 33.3% of the PAGA

7   settlement, the total attorney's fees for the individual and PAGA settlements combined "amounts

8   to 33.3% of the gross settlement," and that costs "are being reasonably split between the individual

9   and PAGA settlements."  ECF No. 45 at 12.

10       The Court finds this reasoning to be largely unpersuasive.  As to fees, Ayoub cites no

11   authority, and the Court is aware of none, that would entitle counsel to additional fees on the

12   PAGA claims where counsel is already receiving fees in connection with the settlement as a

13   whole.  To the contrary, courts in this district have considered the reasonableness of attorney's

14   fees in the context of the total settlement.  *See Patel*, 2019 WL 2029061, at *2; *Ramirez*, 2017 WL

15   3670794, at *6-7.  Here, the total settlement across Ayoub's individual claims and PAGA claims

16   is $100,000.  ECF No. 45-1 at 7-8, ECF No. 42 at 7-8.  The fee amount that counsel will receive

17   through the individual settlement, $28,500, amounts to 28.5% of the total settlement and is thus

18   already in the upper percentile of the Ninth Circuit's established "usual range" of 20-30%.

19   Ayoub does not describe any "special circumstances" to justify additional fees, nor is there an

20   apparent reason for the Court to infer the existence of such a circumstance from Ayoub's motion.

21   The Court therefore finds the additional $7,833.33 in fees to be unreasonable, and that sum shall

22   be returned to the PAGA Settlement Fund to be disbursed accordingly.[7]

23   _____

24   [6] The Court's prior order incorrectly stated that the amount was $38,000, but the settlement agreement provides for $28,500.  ECF No. 42 at 8.

25   [7] Counsel's lodestar, calculated from the billing rates of Adam Rose and Manny Starr, is $87,775. EFC No. 45-1 at 19-20; ECF No. 55 at 2.  The attorney's fees secured in the settlement as a whole, $28,500, is 32.4% of the lodestar.  While the Court may not alter this amount because it is provided in connection with the individual settlement, the Court notes that this percentage is reasonable in light of the work expended by counsel in securing a settlement after a half-day mediation prior to full discovery and motion practice.  *Cf. Patel*, 2019 WL 2029061, at *4 (finding a fee award of approximately 18% of the lodestar to be reasonable "in light of over five years of work involving substantial discovery, motion practice, and mediation effort").

United States District Court
Northern District of California

As to costs, Ayoub states that the costs are reasonably split between the PAGA and individual claims as follows:  "[t]he total costs [sic] for the entire case were $7,109.64 - $3,134.64 of the costs [sic] was attributed to the individual settlement, and $3,500 of the costs [sic] is attributed to the PAGA settlement."  The latter two figures total $6,634.64, not $7,109.64, and so the proposed allocation makes no sense.  Examining Plaintiff's actual costs, however, ECF No. 45-1 at 23, they do, in fact, total $7,109.64.  The Court further finds that these costs were reasonably incurred.  And while Plaintiff provides no authority concerning the appropriate allocation of costs between PAGA and individual claims, the Court notes that one well-respected district court has approved an equal division between the two sets of claims.  *Perez v. All Ag, Inc.*, No. 1:18-CV-00927-DAD(EPG), 2021 WL 3129602, at *7 (E.D. Cal. July 23, 2021).  The Court does the same here, and awards costs of $3,554.82.

## CONCLUSION

For the foregoing reasons, the PAGA settlement is approved and Ayoub's request for attorney's fees and costs is granted in part and denied in part.  Ayoub's individual claims and PAGA claims are hereby dismissed with prejudice.  The Clerk shall enter judgment and close the file.  The Court will retain jurisdiction over this matter for the purposes of effectuating and enforcing the terms of the individual settlement agreement and the PAGA settlement agreement.

**IT IS SO ORDERED.**

Dated:  December 29, 2022

_____
JON S. TIGAR
United States District Judge